LAW OFFICE OF SHAWNA L. PARKS
SHAWNA L. PARKS (SBN 208301)
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, CA 90027
Phone/Fax: (323) 389-9239
sparks@parks-law-office.com

DISABILITY RIGHTS CALIFORNIA
BEN CONWAY (SBN 246410)
350 South Bixel St. Suite 290
Los Angeles, CA 90017
Phone: (213) 213-8000
Fax: (213) 213-8001
Ben.Conway@disabilityrightsca.org

Attorneys for Plaintiff Megan Borella

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN BORELLA,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and DOES 1 TO 10, inclusive.<br><br>　　　　　　　Defendants.<br>_____ | Case No.: 2:19-cv-10120<br><br>**COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101,** *et. seq.***; SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794,** *et. seq.***; THE UNRUH CIVIL RIGHTS ACT CAL. CIV. CODE § 51,** *et. eq.***; GOVERNMENT CODE SECTION 11135**<br><br>**Demand for Jury Trial** |

Case 2:19-cv-10120-JFW-GJS   Document 1   Filed 11/26/19   Page 2 of 16   Page ID #:2

## JURISDICTION AND VENUE

1. The first two claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 et seq.) ("ADA"), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et seq.) ("Section 504"), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiff's federal claims, Defendants have also violated Plaintiff's rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Jurisdiction and venue are proper under 20 U.S.C. § 1391(b) because Defendant is located within Los Angeles County, and all the acts and/or omissions giving rise to the claims in this action occurred in Los Angeles County, which is located within the geographical boundaries of the judicial district for the United States District Court for the Central District of California.

## PARTIES

3. Plaintiff Megan Borella is fourth year student at the University of California ("UCLA"). She has attended UCLA since 2016. She resides in Los Angeles, California, which is located within Los Angeles County. Ms. Borella, who is blind, was and is a qualified individual with a disability within the meaning of Section 504, the ADA, the Unruh Civil Rights Act and other state nondiscrimination statutes.

4. The Regents of the University of California ("Regents") administer the University of California, including the University of California at Los Angeles. The University of California constitutes a public trust, administered by the corporation known as "The Regents of the University of California." Cal. Const., art. IX, § 9. The University of California at Los Angeles (UCLA) is a public university organized and existing under the laws of the State of California, located within Los Angeles County. At all times relevant herein, the Regents and UCLA were responsible for providing Ms. Borella with full and equal access to its public education programs and activities in compliance with

1
Complaint

the requirements of state and federal law. The Regents and UCLA receive both state and federal financial assistance.

5. Plaintiff is ignorant of the true names and capacities of the defendants named herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege the true names and capacities of said defendants when they have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that DOES 1 through 10, inclusive, have or claim to have an interest in the controversy at issue in this Complaint and/or need to be joined to this action to give effect to the relief sought herein.

## FACTS APPLICABLE TO ALL CLAIMS

6. Plaintiff Megan Borella is a person who is blind. She is currently a senior at UCLA. She enrolled as a freshman in the fall quarter of 2016. Ms. Borella's most effective method of reading documents is braille. Depending on the material she can work with materials in electronic format, using a screen reader. She is registered with UCLA's Center for Accessible Education (hereinafter referred to as "CAE") so that she can, among many things, adequately access course materials. However, Ms. Borella has experienced significant difficulty receiving timely, complete and correct alternate format materials throughout her time at UCLA. This includes, but is not limited to, the following:

7. Ms. Borella started at UCLA as a business economics major, which requires numerous math courses. Math courses require understanding visual graphs, charts, and formulas. Before her first semester in the Fall of 2016, which began in September 19, 2016, Ms. Borella requested a braille textbook for her Precalculus course. She received the textbook in piecemeal throughout the quarter and often received chapters of the textbook late in the week in which those chapters were to be read. Furthermore, many of the visual components of the textbook, such as graphs, were not labeled in braille. Ms. Borella did not receive the final sections of her textbook until Week 8 or 9 of the quarter.

There are ten weeks of classes each quarter at UCLA. Due to delays in receiving relevant textbook sections, Ms. Borella had to take both her second midterm and final late.

8. In the Winter 2017 quarter, which began in January 4, 2017, Ms. Borella enrolled in Calculus, for which she again requested a braille textbook. She again experienced delays in receiving sections of her textbook, and did not receive the complete textbook until about three days before the final exam. Both midterms for this course were extended due to these delays. Again, there were issues with visual components of the textbook not being labeled in braille.

9. For both Ms. Borella's Calculus and Economics classes there were problems with the Brailling of the exams. For example, when the mid-terms and final were put into braille no labels were put on the graphs.

10. Despite the myriad problems with receipt of alternate format materials, Ms. Borella managed to pass these classes, but received grades that were lower than her typical performance as a student.

11. Due to the challenges in receiving brailled materials, shortly after the Winter 2017 quarter, Ms. Borella changed her major from business economics to political science, as she believed that political science courses would not require as many accommodations for visual materials.

12. However, Political science majors are required to take a statistics course. Ms. Borella enrolled in Statistics 10 for the Winter 2018 quarter. Due to her past experiences and challenges in math courses and their visual components, Ms. Borella requested a braille issue of the course's textbook six weeks in advance of the start of the course. At the suggestion of the Alternative Format Services Coordinator at the CAE Tony Buffo, Ms. Borella met with Ms. Laura Nunez at the CAE on December 11, 2017. At this meeting, Ms. Borella agreed to try reading an electronic version of the textbook, supplemented by raised line graphs, because she did not believe that she would be able to timely receive a copy of her textbook in braille.

13. Despite having agreed to her less preferred accommodation in the hope that she would receive complete, timely and correct materials, Ms. Borella encountered significant problems even then. When she did receive sections of the textbook from the University, she received PDF, not Word, versions, which created challenges in reading the text via her screen reader. For example, Ms. Borella had trouble navigating tables, as they were often separated in columns. As to the raised graphs, many were illegible, as the embossments were hard to detect, and some of the dots were too close together. At one point, Ms. Borella's friend had to redraw the graphs in puff paint so that Ms. Borella can feel the graphs. Eventually, a new embossing machine was purchased by the CAE, but not until the end of the quarter.

14. Ms. Borella also did not receive the materials in a timely fashion. After week three of the quarter, while she sometimes got materials ahead of time she "more commonly she received them during the week they were assigned to be read. [Ms. Borella] often reads ahead in difficult classes, but could not do that in Statistics 10 because she usually did not have all the materials she would need prior to the week they were covered." (Grievance Report)

15. There were also embedded screenshots of formulas that her program could not see in her notes. She encountered additional problems on exams. In her first exam, Ms. Borella explained to University staff that "she had problems with some of the raised line graphs on her exam, her exam was numbered differently than the exam the proctor read to her (which took some time to resolve), and there were formulas on the exam she had not read in her electronic version of the textbook or classnotes." (Grievance Report) Even as of the time of the mid-term she had not received all of the covered formulas in Braille.

16. The professor in the statistics course, also utilized powerpoint presentations in her lectures, which needed to be converted into an alternative format by the CAE for Ms. Borella. The CAE did not provide the professor a timeline or a deadline as to when

the powerpoints should be provided to the CAE so that Ms. Borella can receive the accessible documents timely.

17. Due to the foregoing issues regarding the statistics course, Ms. Borella received a D in the course. In March of 2018, Ms. Borella filed a grievance with UCLA's Americans with Disabilities Act/Section 504 Compliance and Grievance office because of the University's failure to provider her with complete, timely and accurate alternate format materials. The Compliance Officer assigned to Ms. Borella's case found that UCLA failed to reasonably accommodate Ms. Borella by failing to adequately and timely provide alternative format materials. Among other things, the grievance found that: the "challenges impeded [Ms. Borella's] ability to prepare for her exams in the course;" "In addition to affecting Student's ability to understand the materials, Student reported that it was stressful and difficult not to have the same access to materials as her peers. For these reasons, it is likely [Ms. Borella] was harmed by not timely receiving alternative format materials;" "[Ms. Borella] was harmed by not having consistent access to readable graphs;" and that "This omission [of formulas from notes] likely impacted Student's mastery of the material related to those formulas."

18. Despite the outcome of the grievance in her favor, Ms. Borella still had a D in the course. As a result, she spent the next year and a half negotiating with the University in order to address that detrimental grade. After approximately a year and a half of such negotiations, UCLA finally changed Ms. Borella's Statistics 10 grade to a passing grade, rather than a letter grade and allowed it to count towards her major.

19. Even since the time of the grievance, Ms. Borella has continued to have problems receiving needed accommodations. She continues to receive materials in a piecemeal fashion, with sections of books coming in as the class is covering them, and frequently does not receive the complete set of reading assignments until the fifth week of the quarter, or approximately half-way through the term. In addition, she continues to receive materials that are not converted correctly such that they are not readable to her. She then has to notify the University that the documents do not work and then have them

re-done. In addition, the CAE will only provide materials for which the syllabus for the course labels as "required reading," and will not provide other parts of the textbook that are not required or other recommended readings. This does not allow Ms. Borella to have context for the required readings or provide her a boarder knowledge of the substantive materials that is afforded to her peers. In addition, the process to receive accommodations continues to be extremely cumbersome, requiring Ms. Borella to send itemized receipts and pictures of the picture and copyright to the University before it will begin converting the text. Finally, there appears to be no clear procedure for providing accessible materials that are professor-provided, e.g. powerpoints and handouts, with Ms. Borella being told by the CAE that it is the professor's responsibility to make those materials accessible. Ms. Borella has continued requesting those accessible materials from the CAE, but is not sure how long that will last.

20. For example, in the Fall quarter of 2019, in her Political Science class on American Suburbanization, Ms. Borella did not have the materials for week three or four as those weeks were approaching, and she needed said materials for an upcoming quiz. She thus contacted the CAE and spoke to their alternate format specialist, who told her that they had not gotten to it yet. She then followed up by email. The CAE then sent the materials later that day but they had not been converted correctly. Ms. Borella spent approximately two hours trying to navigate through twelve pages of materials. Giving up in light of the technical difficulties, she sent it back to the CAE office. CAE then converted it to a different program which worked. Due to this process, she was still trying to get the material to read up until a day or two before the first quiz. Similar problems repeated again for the second quiz for the same class.

21. Thus, even though Ms. Borella tries to be diligent in requesting her materials as far in advance as possible, oftentimes the University will not begin the process until the physical books are actually shipped and received by Ms. Borella – something not in her control, and that frequently occurs as the quarter is beginning. This all takes significant time and diligence on the part of Ms. Borella – time and diligence that other

students do not need to worry about. In essence, Ms. Borella is required to be constantly vigilant to determine what is being covered in class, what materials she has received (or not received) and whether those materials are actually readable, all while simultaneously keeping up on her studies and the substance of her work.

22. As a result, Ms. Borella has been denied meaningful access to her education in that her ability to access her education was significantly impeded. Ms. Borella has suffered significant anxiety, frustration and depression as a result of constantly having to struggle to keep up with her fellow classmates and having to constantly monitor the receipt, or lack thereof, of accessible materials. These denials also affected Ms. Borella's grades, and impeded her ability to access the same material as his classmates. She worries how this will impact her future prospects post-college, including any possible applications to graduate school.

## FIRST CAUSE OF ACTION
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §12131, *et seq.*

23. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

24. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a) (2).

25. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b) (1)-(2).

26. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

27. Pursuant to Title II public entities are required to provide meaningful access to their programs, services and activities. Specifically, public entities must "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. §35.160(a)(1). To accomplish this, it must "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* at §35.160(b)(1). "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner…." *Id.*

28. Further, public entities cannot provide programs, services or benefits to a person with a disability that are not equal to those provided to others or deny a person with a disability the opportunity to participate in programs, services or activities. 28 C.F.R. §35.130(b)(1)(iii). Public entities must also modify their policies and procedures when necessary to accommodate disability related needs, and cannot impose eligibility criteria that tend to screen out persons with disabilities. *Id.* at §35.130(b)(7) & (b)(8). Public entities must also engage in an interactive process to determine appropriate and necessary accommodations.

29. At all times relevant to this action, Defendant is a "public entity" within the meaning of Title II of the ADA and provides a program, service or activity to the general public.

30. At all times relevant, including at the time of each alleged violation of the ADA, Ms. Borella was a qualified individual with a disability within the meaning of the ADA in that she is blind.

31. At all times relevant, including at the time of each alleged violation of the ADA, Defendant provided services, programs and activities in university, and was obligated to provide Ms. Borella with reasonable accommodations, auxiliary aids and services, and effective communication that she needed in order to enjoy meaningful access to the benefits of a public education, and otherwise not exclude her from or deny her the benefits of its educational program.

32. Defendant acted in violation of Title II of the Americans with Disabilities Act through failing to provide meaningful access to its educational program in violation of the above requirements, including, but not limited to, failing to provide Ms. Borella with her required accommodations, aids and services in a timely, complete and effective fashion, and in some instances failing to provide them at all.

33. Accordingly, Defendant has violated Title II of the Americans with Disabilities Act, and Plaintiff thereon alleges that Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights, particularly given the length of time the problems persisted and the severity of the problems.

34. As a result of the foregoing, Ms. Borella suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer loss of equal educational opportunity, as well as humiliation, hardship, anxiety, and depression, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and its exclusion of Plaintiff.

35. Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

36. Plaintiff seeks injunctive relief, damages and attorneys' fees and costs as a result.

## SECOND CAUSE OF ACTION

### SECTION 504 OF THE REHABILITATION ACT OF 1973

### 29 U.S.C. § 794(a)

37. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

38. Under Section 504, a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

39. Under Section 504, the phrase "program or activity" includes a local educational agency. 29 U.S.C. § 794(b)(2)(B).

40. Under Section 504 public entities are required to provide meaningful access to their programs, services and activities. Specifically, the aids, benefits and services provided, "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement." 34 C.F.R. §104.4(b)(2). Further, public entities may not "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," *Id.* at §104.4(b)(1)(iii), and may not "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." *Id.* at §104.4(b)(1)(ii); *see also* 34 CFR § 104.43 & 104.44.

41. At all times relevant, including at the time of each alleged violation of Section 504, Defendant received federal financial assistance as a public school.

42. At all times relevant, including at the time of each alleged violation of Section 504, Ms. Borella was a qualified individual with a disability within the meaning of Section 504 in that she is blind.

43. Defendant acted in violation of Section 504 through failing to provide Ms. Borella with her required accommodations, aids and services in a timely and complete fashion, and in some instances failed to provide them at all.

44. Accordingly, Defendant has violated Section 504, and Plaintiff thereon alleges that Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights, particularly given the length of time the problems persisted and the severity of the problems.

45. As a result of the foregoing, Ms. Borella suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer loss of equal educational opportunity, as well as humiliation, hardship, anxiety, and depression, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and its exclusion of Plaintiff.

46. Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

47. Plaintiff seeks injunctive relief, damages and attorneys' fees and costs as a result.

## THIRD CAUSE OF ACTION
## UNRUH CIVIL RIGHTS ACT

48. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

49. California's Unruh Civil Rights Act prohibits discrimination against individuals with disabilities and also prohibits discrimination based on a person's disability or perceived disability.

50. Section 51 of the California Civil Code provides, in relevant part: "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their…disability…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

51. Under Unruh "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section." Civil Code §51(f).

52. Unruh holds liable anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to" Section 51 of the California Civil Code for "each and every offense." Cal. Civ. Code § 52.

53. Defendant is a business establishment for the purposes of Unruh.

54. Defendant denied, or aided or incited a denial of, or discriminated with respect to Ms. Borella's right by law to the full and equal advantages, accommodations, facilities, privileges and services associated with a public education.

55. Defendant's discriminating conduct was based on Ms. Borella's disability.

56. As a result of the foregoing, Ms. Borella suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer loss of equal educational opportunity, as well as humiliation, hardship, anxiety, and depression, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and its exclusion of Plaintiff.

57. Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

58. Plaintiff also seeks damages and attorneys' fees and costs as a result. Pursuant to California Civil Code § 52.1(f), Defendant is liable to Plaintiff in an amount totaling no less than $4,000 for every violation of California Civil Code §51 *et seq.* or up to three times of actual damages.

/ / /

/ / /

/ / /

# FOURTH CAUSE OF ACTION

## GOVERNMENT CODE SECTION 11135

59. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

60. California law affords people with disabilities a right to "equal access" to programs and activities subsidized by state funds; such programs may not discriminate against people with disabilities. Cal. Gov't Code § 11135(a).

61. State funded programs may not deny a person the opportunity to participate in, or benefit from, its services and programs. 2 Cal. Code Regs § 11154(a). Such programs must provide effective access that results in an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others. *Id.* § 11154(c). Such programs may not "otherwise limit a person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by" the general public. *Id.* § 11154(g)

62. In addition, any violation of the ADA constitutes a violation of Government Code Section 11135. Cal. Gov't Code § 11135(b).

63. State funded programs may not use criteria or methods of administration that have the purpose or effect of limiting the participation of people with disabilities. *Id.* § 11154(i).

64. Defendant receives state funding to operate the university.

65. Defendants have violated Ms. Borella's rights under Section 11135 and its regulations.

66. Because Defendants' conduct is ongoing, Plaintiff seeks declaratory and injunctive relief. Further, as a direct result of Defendants' actions and inaction, Plaintiff is suffering irreparable harm and seeks speedy and immediate relief.

67. Plaintiff seeks declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

# PRAYER FOR RELIEF

Plaintiff prays this Court enter judgment as follows:

1. A finding that Defendant's conduct violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* and 28 C.F.R. §§ 35.104, 36.104 (the "ADA"); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 *et seq.* ("Section 504"); the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* ("Unruh Civil Rights Act"); and California Government Code Section 11135.

2. An injunction ordering Defendants to comply with Title II of the ADA, Section 504 of the Rehabilitation Act, Government Code Section 11135, and Unruh Civil Rights Act;

3. Damages in an amount to be determined by proof, including but not limited to damages under 42 U.S.C. 12133, 29 U.S.C. §794(a), and Cal. Civil Code §52, including all applicable statutory damages;

4. Any other such damages as may be allowed under all the above federal and state laws;

5. Plaintiff's reasonable attorneys' fees and costs in this action, including, but not limited to, 42 U.S.C. §12205, 29 U.S.C. §794(b), Cal. Civil Code §52 and Cal. Code Civ. Proc. 1021.5.

6. Such other and further relief as the Court deems just and proper.

Dated:   November 26, 2019            LAW OFFICE OF SHAWNA L. PARKS

DISABILITY RIGHTS CALIFORNIA

By: _____
SHAWNA L. PARKS
*Attorneys for Plaintiff Borella*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: November 26, 2019

                          LAW OFFICE OF SHAWNA L. PARKS

                          DISABILITY RIGHTS CALIFORNIA

                          By: _____
                              SHAWNA L. PARKS
                              *Attorneys for Plaintiff Borella*